# Scales v. Central Iron & Coal Co.

*Injury to Servant.*

(Decided April 13, 1911.  Rehearing denied May 5, 1911.
55 South. 821.)

1. *Pleading; Filing; Time; Tuscaloosa County Court.*—Acts 1896-7, p. 267, requires plea to be filed within thirty days after service of complaint, and authorizes default on motion at any time thereafter, and in the absence of a motion for judgment by default it is not error to refuse to strike pleas filed after the thirty day period.

[Scales v. Central Iron & Coal Co.]

. 2. *Evidence; Opinions.*—Questions asked a witness as to the cause of the reduction of plaintiff's wages were properly excluded as calling for an opinion.

. 3. *Master and Servant; Injury; Jury Question.*—The evidence in this case examined and held to require a submission to the jury of whether or not plaintiff's foreman was guilty of negligence, causing the injury complained of.

(Simpson and Sayre, JJ., dissent.)

APPEAL from Tuscaloosa County Court.

Heard before Hon. H. B. FOSTER.

Action by Willis A. Scales against the Central Iron & Coal Company, for damages for injuries alleged to have been received while in its employment. Judgment for the defendant and plaintiff appeals. Reversed and remanded.

- BROWNE & WARD, for appellant. The court erred in overruling appellant's motion to strike the pleas filed more than thirty days after service.—Acts 1896-7, p. 267. The court erred in overruling demurrers to plea 3. —*Meriwether v. Sayre M. & M. Co.*, 49 South. 916; *So. Ry. Co. v. Guyton*, 25 South. 38. The court erred in giving the general charge for the appellee.—*B. So. Ry. v. Fox*, 52 South. 889, and authorities supra. An employe does not assume risks incident to the failure of his superior to guard against dangers, which may be guarded against by the exercise of ordinary care.—*T. C. I. & R. R. Co. v. King*, 50 South. 75; *S. L. & S. F. Ry. Co. v. Brantly*, 53 South. 308. It was a question for the jury whether the foreman was negligent to plaintiff's damage.—*Bessemer L. & I. Co. v. Campbell*, 25 South. 793; *Western S. C. & F. Co. v. Hammond*, 40 South. 280, and authorities supra.

JONES & PENICK, for appellee. There was no evidence to sustain the 1st, 2nd, 3rd, 4th and 6th counts, and the 5th count was not sufficiently made out.—*M. & O. v.* against the appellee, for personal injuries receibed by plaintiff assumed the risk.—1 Lebatt 611-614.

SIMPSON, J.—This is an action by the appellant eleventh section of said act provides that defendants the plaintiff while working as a carpenter on the furnace plant of defendant.

The first assignment of error insisted on, is to the action of the court in refusing to strike defendant's pleas 3, 4, 5, and 6, the contention being that said pleas were not filed within the time prescribed by the special act under which said Tuscaloosa county law and equity court was established.—Acts 1896-97, p. 262. The eleventh section of said act provides that defendants shall appear and demur or plead to the complaint within 30 days after service, and authorizes judgment by default, on motion of plaintiff, at any time thereafter. The complaint was filed February 14, 1910, and served February 16, 1910, demurrer filed May 20, 1910, and said pleas were filed June 6 and 7, 1910. In the meantime no motion was made for a judgment by default. Said section of said act prescribes terms upon which pleas may be filed after judgment by default, but makes no special requirements as to terms on filing pleadings after the 30 days and before default claimed. There was no error in refusing to strike said pleas.

There was no error in sustaining the objection to the questions as to the cause of the reduction of plaintiff's wages, as the questions called for the opinion of the witness, and should have asked for facts, leaving it to the jury to determine why the wages were reduced.

The plaintiff, as a carpenter, was working under the orders of Mack Powell, to whose orders he was bound to conform, and did conform. The dust box is cylindrical in shape, from 10 to 18 feet in diameter, and 20 feet or more in length, large enough for men to walk inside. The dust was transmitted from the furnace above, down into said dust box, through large pipelike passageways called "down comers," which are large

41—173

enough for a man to pass through. For the purpose of relining said dust box, the carpenters had erected a scaffold therein, upon which scaffold were placed sections of ovalshaped lagging which supported the brick that were used in lining said dust box, until sufficiently dried for said lagging to be removed. No light came into said dust box except such as shone through two explosion doors in the top thereof, one being at each end of said dust box, and each large enough for a man to crawl through. There were wires for transmitting electricity, hanging through the explosion doors, upon which were placed electric lights, but there were no bulbs or electric lamps in the sockets, though there had been the day before.

While the plaintiff was in the performance of his general duties, he and his squad were ordered by said Powell to go into said dust box and tear out the scaffolding or lagging, there then being one or more electric lights furnishing sufficient light to work in said dust box. On the next morning, when plaintiff went into said dust box to continue said work, he discovered that there was no electric lamp or bulb therein, and he came out and reported the fact to said Powell, stating that he did not like to go in and work in the dark while the brick masons were working above, in the "down comer," for fear that something might fall on him; and said Powell ordered him to go back to work, stating that they could not wait for the electrician to put lights in. Plaintiff, in obedience to orders, then went back, and when he had passed one piece of lumber through the bootleg below, a piece of lumber, with an eight or ten penny nail protruding from the end thereof, fell from some point above and struck plaintiff on the head, causing the injury complained of. Plaintiff could not see said plank, nor how to protect himself therefrom, nor where it came from.

[Scales v. Central Iron & Coal Co.]

It will be observed that the only negligence complained of is the failure to renew the electric bulb. There is no evidence tending to show that if the bulb had been there, the plaintiff could have seen into the regions above him, so as to discover the falling plank in time to avoid it; no causal connection is shown between the absence of the light, and the falling of the plank, and there is no evidence tending to show whether the falling of the plank was the result of the negligence of any one; and there is no allegation or proof as to who was responsible for the falling of the plank. For aught that appears, it may have resulted from the negligence of the plaintiff and his co-workers, in constructing the scaffold. In fact, the explosion doors being closed, there was no place for the plank to fall from, except the platform that had been erected by plaintiff and his co-employes.

There was no error in the action of the court in sustaining the motion to exclude the evidence of the plaintiff, and giving the general charge in favor of the defendant. This being the case, it is unnecessary to notice exceptions to rulings on the pleadings.

The judgment of the court is affirmed.

Affirmed.

McCLELLAN, MAYFIELD, and SOMERVILLE, JJ., concur.

## On Rehearing.

SIMPSON, J.—The majority of the court, consisting of ANDERSON, McCLELLAN, MAYFIELD, and SOMERVILLE, JJ., hold that the evidence was sufficient to leave it to the jury to say whether or not the injury resulted from the negligence of Mack Powell. The writer's views, concurred in by SAYRE, J., are as follows:

It is claimed on application for rehearing that the failure to have the light renewed was not the only neg-

ligence complained of, and the court's attention is invited to the fifth count of the complaint. It is manifest that, under that count the burden was on the plaintiff to show by the evidence that it was negligent in Powell to order plaintiff to go into the dust box to work, and to show a causal connection between such negligence and the injury.—*Creola Lumber Co. v. Mills*, 149 Ala. 474, 485, 42 South. 1019. "Where the evidence is equally consistent with either view, with the existence or non-existence of negligence, it is not competent for the judge to leave the matter to the jury. The party who affirms negligence has failed to establish it. This is a rule which ought never to be lost sight of."—1 Bailey's Personal Injuries, p. 560, § 1660. The burden is on the plaintiff to show, by the evidence, the causal connection between the negligence and the injury. A mere conjecture cannot be submitted to the jury, without evidence.—1 Bailey's Personal Injuries, p. 563, §§ 1672, 1675; p. 565, § 1682; p. 566, § 1688; p. 568, § 1694.

There is not a particle of evidence tending to show that the order was negligent, unless because the light was out; that was the reason given by the plaintiff when he objected to work, and that is the only reason suggested in the plaintiff's brief either on the original hearing or on this rehearing. There is no evidence as to where or how the "down comer" enters the dust box, whether into the top, where the explosion doors were, or into the side. There is no evidence that any one was in the "down comers," or that there was any scaffold therein; the only evidence about any scaffold being the testimony of plaintiff that the carpenters had erected "a scaffold" in the dust box.

Said fifth count alleges that said Powell "did negligently order the plaintiff to work in the place and in the manner, in which he was then engaged," etc.; and

so far from there being any evidence that Powell ordered plaintiff to work in the manner which he did, the plaintiff testified that Powell was not anywhere near where the work was being done, and "that the only orders that Powell gave were to go in there and tear out the scaffolding or lagging, and that he gave no orders or directions as to the manner of doing the work, and was not where he could see and did not see the work as it progressed, or the particular manner in which it was being done," and yet in the face of this plain statement by the plaintiff himself, counsel would have us declare that said Powell did direct the manner in which the work should be done, because he told him to go there and work when there was no light there. "Manner" in this sentence means only the mode or method in which the thing is done, and cannot refer to the condition of the place in which the work is done. There is not only no proof that the said Powell directed the manner in which the work should be done, but there is none as to the manner in which it was done, further than as stated by the plaintiff—"when he and Charlie Merckle had passed one piece of lumber through the boot-leg to Lehman Merckle down on the ground, and when he had been in said dust box not more than fifteen minutes a piece of lumber  *  *  *  fell from some point above." It does not appear what position the plaintiff was occupying, but from the facts that there is no evidence of any, but the one scaffold in the dust box, and that plaintiff was passing the pieces of lumber through the bootleg, down to a man on the ground, the presumption is strong that he was below said scaffold, and that he was there to remove, and that if there was any negligence about it, it was that of plaintiff himself, or of Merckle, who was working with him; in which case, of course, he could not recover.

[Scales v. Central Iron & Coal Co.]

In regard to the exclusion of the evidence on the part of the plaintiff, whether we follow the cases which hold that this is a proper proceeding, when the plaintiff has failed to make out a prima facie case, or adopt the suggestion in one of our cases that if it be a case in which the general charge could be properly given it is error without injury, it matters not, the result being the same. The general charge was given for the defendant in this case, and it was proper, whether the evidence was in or out. In regard to this, it may be further said that as the bill of exceptions does not state that it contains all the evidence, and there is no conflict in the evidence therein contained, the court cannot be placed in error for giving the general charge.

This court has frequently held that where the general charge is properly given, or where the party is entitled to the general charge, it is not necessary to consider other matters.

The rehearing is granted; and the judgment of the court is reversed and the cause remanded.

MAYFIELD, J.—I concur in granting this application for a rehearing, and in reversing the judgment of the trial court, upon the ground that there was sufficient evidence to carry the case to the jury upon one of the counts; but I am of the opinion that the case should be reversed upon an entirely different ground.

The court, on defendant's motion and over the objection of plaintiff, excluded all of the plaintiff's evidence from consideration by the jury. This was undoubtedly error. No trial court can refuse to admit, or can exclude, over the objection of a party, such evidence as is shown by this record, without committing error. The error may be cured by subsequently admitting the evidence; or if the error be without possible injury to the party complaining, it is not, therefore, error to reverse

[Scales v. Central Iron & Coal Co.]

the judgment or revise the erroneous ruling. But un-
less one of these things, or something else is shown, to
cure the error or render it harmless, it is error which
must work a reversal.

I am aware that such a practice has in recent years
grown up in this state, and is often resorted to by de-
fendants in the trial of civil cases, and is practiced by
many of the ablest and most eminent counsel in the
state, and that it is allowed by many of the most
learned and experienced trial judges, and that it has
been allowed by this court in a number of cases; but it
has never been approved further than by the failure to
prohibit it, and has been one or more times criticised
and adversely.

The practice has sometimes been said by this court
not to be error, and at other times, to be error without
injury. When it was said not to be error, of course, the
court meant, not *reversible* error in that particular
case. It is of course error, and necessarily so, techni-
cally speaking.

The rule is firmly settled in this state that, error be-
ing shown, injury is presumed. Appellate courts will
indulge all reasonable intendments and presumptions
to save the trial court from error; but they never make
any such intendments or presumptions as to injury. On
the other hand the presumption is the other way as to
injury. An appellant never has to show injury in or-
der to obtain a reversal; if he shows error, injury is
presumed, unless the contrary is made to appear clear-
ly and affirmatively. In other words, on appeal, the bur-
den is on the appellant as to error, but on the appellee
as to injury. To illustrate these two rules, let them be
applied to the facts of this case as shown on the appeal
by the transcript:

Suppose the trial court had declined to exclude the
evidence, but had given the affirmative charge for the

defendant.  We could not reverse this case though the evidence in the record did tend to prove the issue; because, in order for the appellate court to say there was error, it would have to know all the evidence, and this record does not show or purport to show all, and the court would presume that evidence omitted would justify the charge.  But if the trial court excluded evidence which was material, relevant, and competent and tended to prove the issue, this was error, whether it was all or a part only—whether one word or a book.  This was all appellant was required to show; he was not required to show that this was all the evidence, or that he was injured thereby; and if he shows error the appellate court will presume there was injury.

The burden is on the appellee to show that the error was harmless, and if he does not discharge this burden the case must be reversed.  This burden is not discharged in this case.  It does not appear that it was all the evidence, nor otherwise that it was harmless.  But I do not mean to say that it would not be reversible error if it was shown that it was all the evidence, and it did not make out a prima facie case for plaintiff.  If competent and relevant, and tending to prove any issue on trial, it cannot be excluded over the objection of either party without the commission of reversible error.  It is reversible error because the statutes of this state have provided the modes by which the court, instead of the jury, may test the sufficiency of the plaintiff's evidence to support the verdict, and these modes established by statute are exclusive of other modes which deprive the parties of advantages secured by the statutory mode.  Either party has the right to have it tested by these modes, and no other can be resorted to unless by consent.

Courts certainly have no more power or authority to establish, sanction, or allow a practice or procedure

which would deprive a person of his rights or property without due process of law, than the Legislature has, to enact a statute to that end. The Constitution inhbits judges and courts in this matter, as much as it does the Legislature.

At an early date, to wit, June, 1822, it was decided by this court, that the trial court, unless so directed by statute, could not order a nonsuit. In that case it was said: "If the evidence shows a claim irrelevant to the form of action, or to the issue, it is competent for the court to so instruct the jury; but if the plaintiff appears, and refuses to submit to the nonsuit, and insists that the jury shall render a verdict, the court has no power to direct a nonsuit, and cannot enforce its opinion, except by instructing the jury, and awarding a new trial."—*Smith v. Seaton,* Minor, 75. This language of the court was quoted and reaffirmed in the case of *Hunt v. Stewart,* 7 Ala. 528. In that case it was said: "It is clear from what is already said that he (plaintiff) failed to make out his case, and the court would have been authorized to instruct the jury to find against him, and the jury could not without a disregard or misapprehension of duty, refuse to do so. This being the case, the plaintiff is not prejudiced, and if the point was res integra, we might be inclined to consider the nonsuit as a mere irregularity which did not avail on error; but it was held by our predecessors at a very early date that it was not allowable for a court, unless directed by statute, to order the plaintiff to be nonsuited. * * * The plaintiff insists upon a verdict whenever he puts his case before a jury, and does not consent to a withdrawal. Upon the authority of the case last cited, the judgment is reversed and the cause remanded." These cases have been subsequently followed, and never departed from, and the statutes, which the courts then held did not allow it, remain to this day, and have been

often readopted and amended, not to the end of allow-
ing such a practice, but of further preventing it. Con-
sequently, it is too late now to overrule such statutes
and depart from that practice.

The practice of excluding all the plaintiff's evidence,
or all of that of both parties, is nothing more nor less
than the court's declining to submit it to the jury with
instructions; and this, the statutes of this state do not
authorize, while the decisions of this court have held
that the trial court could not so decline, in the absence
of statutory authorization. On the other hand, it is the
purpose and effect of the statute to expressly declare
that the plaintiff has, in such case, the absolute right
to insist upon a verdict under such conditions, when
he puts his case to the jury, and that he does not con-
sent to a withdrawal of his evidence; and the court can-
not compel him to withdraw it, though it be authorized
to instruct the jury to find against him on it, and to set
aside the verdict if they fail to obey. It is futile to say
that the practice of excluding all the evidence, and then
charging the jury that if they believe the evidence they
must find for the defendant, is not a nonsuit. This is
nothing short of an attempt to avoid the statutes as to
nonsuits, and to make the judgment a bar to another
suit, which would not have that effect if a nonsuit was
entered. To exclude a plaintiff's evidence when he in-
sists that it is sufficient to go to the jury on, as tending
to prove the issue made, is nothing more nor less than
compelling the plaintiff to take a nonsuit.

It is a farcical comedy to allow or compel parties to
go to the jury after the evidence is all excluded. There
is nothing for the jury to consider, nothing for them to
believe or not believe; the only thing to do is to enter
up a judgment for the defendant; but it is a judgment
of nonsuit, or nol pros., and not a judgment final based
on the verdict of the jury (the jury have nothing to

base a verdict upon), so as to preclude or bar another suit. In order to have this effect, the case must be submitted to the jury upon the evidence offered, even though the court is authorized to direct a verdict; there being nothing worthy of the consideration of the jury. And this is the exact purpose and effect of our statutes, as declared by our courts; while the practice complained of is a clear evasion of these statutes, and is depriving the plaintiff of his rights conferred by the statute.

Of course it is not error for the court to give the affirmative charge for the defendant after the evidence is excluded, the burden of proof being upon the plaintiff. It is really nonsense to request or give such instructions to the jury. If the plaintiff has anything to complain of in this practice, it is the action of the court in excluding his evidence; and this is nothing more nor less than the court's directing, if not compelling, him to take a nonsuit, which is exactly what the statutes are intended to prevent the trial court from doing, and which this court has said it could not do without committing error, though, under the same state of facts, it might direct a verdict.

In the case of *Leavitt v. Dawson*, 4 Ala. 335, the court, in speaking of compulsory nonsuit, said: "It is not important to consider whether the term 'nonsuit' is the most proper to designate this mode of action by the court, because the effect to the plaintiffs is the same as a judgment of nol pros., which is the technical judgment in all cases where the plaintiff refuses to proceed further with his suit." And in that case it was held error to enter a nonsuit, and that the plaintiff could not have been presumed to have consented to a nonsuit.

A plaintiff may, of course, at any time, voluntarily nonsuit, and then bring another action, provided he pay the cost of the first suit; but he can have this ruling re-

viewed on appeal only by conforming to the requirements of the statute.—*Kemp v. Coxe,* 14 Ala. 614.

A nonsuit, even upon the merits of a case, is not necessarily a bar to another action for the same cause, except in a few cases, as stated in Co. Lit. 139a. This is the difference between a nonsuit and a retraxit; the latter is a bar, but the former is not. In England the practice was that if the judge ordered a nonsuit, and the plaintiff brought another suit, the trial court would stay the proceedings upon the second action until the cost of the first was paid, the second action being deemed vexatious; yet, the party could not be deprived of his second action if he submitted to the condition of paying the costs which accrued upon the first suit. This is the uniform practice in most of the states.—*Bridge v. Summer,* 1 Pick. (Mass.) 371.

We have thus far shown the rights of which the plaintiff is deprived, and will now show the rights conferred upon the defendant by this practice, which are in addition to those conferred upon him by statute, or other law, and without subjecting him to any of the penalties which he would incur by pursuing the remedy given him by statute, when he desires to test the sufficiency of the plaintiff's evidence to support a judgment.

Our statutes have from an early period provided two methods by which a defendant could have this question determined by the court, instead of having the effect of the evidence determined by the jury. The first is a demurrer to the evidence; and the other, by requesting the court to charge the jury that they find for the defendant, or, that they cannot find for the plaintiff. In each of these methods the defendant is required by the law to take the chance of a judgment being entered against him. If he merely requests the court to exclude the evidence, he takes no risk—cannot possibly incur any penalty. If the court grants his motion, then, as a matter

of course, the court must give the charge for him, as it
would be error to refuse, when the burden of proof was
on the plaintiffff, and there was no evidence. If the
court should refuse his motion to exclude the evidence,
he would not be injured at all, as he had no right to
make such a motion; and would have no ground of ex-
ception, much less cause, for reversal. This principle
was announced very clearly by the Supreme Court of
Massachusetts, through its great justice, Shaw, to the
effect that if a judge before whom an action is on trial
is of the opinion that the plaintiff is not, upon the whole
evidence, entitled to recover, he may recommend a non-
suit on that ground. If he does so, and the nonsuit
takes place, the plaintiff may allege exceptions; but if
the judge is of the opinion that there is evidence to be
considered by the jury, and declines to order a nonsuit,
this decision is no ground for exceptions by defendant.

The statute has adopted the remedy of demurring to
the evidence but not that of involuntary nonsuit. This
gives him the right to have the evidence made of record
by the court, and by admitting every inference or con-
clusion which the jury can legally deduce therefrom.
He thereby devolves upon the court, instead of on the
jury, the duty of determining the issue of fact between
the parties, as well as of law. This was the effect of the
demurrer to the evidence at common law, and our stat-
ute has copied the words announcing the effect, pur-
pose and object of demurrer to the evidence.—See sec-
tion 5343 of the Code. But in order to do this—that is,
to place the duty upon the court to determine this issue
—he must take the chance of the court's entering a
judgment against him, as well as one against the plain-
tiff. He therefore clearly avoids and evades this statute
when he is allowed to have the plaintiff's evidence ex-
cluded and thereby obtains an involuntary nonsuit.

The other remedy given him by the statute consists of those Code provisions as to charges or instructions to the jury. Our Code contains regulations as to this matter, prohibiting trial courts, ex mero motu, from charging upon the effect of the evidence, and only authorizing the courts so to do when requested in writing by the parties; the statute giving either party the right so to do; that is to say, our statute (section 5362) provides that the court shall not charge upon the effect of the testimony unless requested so to do by one of the parties. If so requested, the statutes require the charge to be in writing. The statutes allow both parties to request the affirmative charge upon the whole evidence in any given case; and such charge is inappropriate in any case except upon consideration of all the evidence. If the practice of excluding all the evidence is allowed,, it would be worse than folly for the plaintiffff to request such a charge when the burden of proof is upon him; while, on the other hand, it is eminently proper and unquestionably without error for the court to direct a verdict for the defendant in such case. So the defendant, by this process, wholly deprives the plaintiff of the right, or any advantage to accrue therefrom.

To sum it all up in a few words, the practice of excluding the plaintiff's evidence is an unauthorized and unwarranted one, the effect of which is to avoid and evade the statutes provided for such cases. It deprives the plaintiff of the rights conferred upon him by statute, and confers upon the defendant rights which are prohibited by statute. It therefore follows that such practice ought not to be sanctioned or allowed by the courts of this state. I do not doubt that such practice is allowable in those states in which involuntary nonsuit is allowed, because that is what excluding the plaintiff's evidence amounts to. The two are one and the same thing in practice and in legal effect; but, as

we have shown above, the practice of involuntary non-suit has never been allowed in this state. The statutes provide for nonsuits when made necessary by adverse rulings, but the result obtained thereby is quite different from this complained of.

The state of Missouri has a system of pleading and practice very similar to that of Alabama, and the Supreme Court of that state nipped this practice in the bud when it was first attempted there, in the following language: "There is no law in this state authorizing the court, at the close of the plaintiff's case, to strike out his testimony on the ground that the same is insufficient to make out a case for the plaintiff."—*McFarland v. Bellows,* 49 Mo. 311.

The Supreme Court of West Virginia, in speaking of the practice which had been allowed to prevail in that state, said: "Looking to the manner in which this practice has been abused in some of the circuit courts of this state, I cannot refrain from expressing the regret that when it first made its appearance here, it was not met with the declaration which was made by the Supreme Court of Missouri."—*Carrico v. W. Va., C. & P. R. Co..,* 35 W. Va. 395, 14 S. E. 14. That court, in the same case, said that it had been unable to find any case in the reports of the mother state, Virginia, which would be authority for the practice in West Virginia, and that the court was constrained to believe that the practice was an importation from other states, which had been ingrafted upon its procedure in a manner not entirely in accordance with the spirit of its former decisions. This is certainly true in this state, and, it may be added, it is in direct conflict with the early decisions and contrary to express Code provisions which have prevailed in this state for many years. But the West Virginia court proceeds to show that, although the practice prevails in that state, it is limited to cases, first, where all

the evidence of the plaintiff is incompetent; second, where there was an entire and fatal variance between the allegations and the proof; and, third, in those cases where the plaintiff's evidence did not tend in any degree to prove his case.

I believe it will be found upon an examination that the practice has never been allowed to prevail to any great extent except in the states in which an involuntary nonsuit was allowed when the plaintiff had failed to prove his case, because it would be a non sequitur to say that the right to compel a nonsuit does not exist, and yet allow the court to exclude all the plaintiff's evidence when he insisted upon the right to go to the jury upon that question.

As I have before stated, I do not believe that the courts of this state have the power to authorize, sanction, or give effect to any such practice, because the Legislature had provided a procedure for such cases, and the litigants have a right to have that procedure complied with, and it is the duty of the courts to enforce it.

It may be said, and it is possibly true, that when the court excludes the plaintiff's evidence on the defendant's motion, the plaintiff might then take a nonsuit, with a bill of exceptions, because the ruling is adverse to him; but the answer to that is that the law does not require him to do this; and because the defendant and the court have resorted to an unwarranted practice, they cannot escape their error, nor be excused therefrom, because the plaintiff did not resort to some other remedy. The law gives him the option in that instance, and not to the court or the defendant.

As I have pointed out before, though he may not have made out his case, yet, if he thought he had, he had a right to submit that question to the jury unless the defendant demurred to the evidence, or requested the af-

[Scales v. Central Iron & Coal Co.]

firmative charge and the court gave it; and the defendant and the court could not deprive him of his option in determining whether he should take a nonsuit or submit the question to the jury, if a jury case, and, if not, to the court, in the mode and manner provided by law. The defendant and the court have no power to deprive him of these rights which the statutes have conferred upon him, and escape upon the doctrine of "error without injury;" nor should they be heard to say to him: "You should have taken a nonsuit, and not allowed judgment final to be rendered against you."

If the defendant desires to submit the sufficiency of the evidence to the court instead of to the jury, the statutes have pointed out to him, how he shall do it, and have given him the option of two remedies; one, by demurring to the evidence; and the other, by requested charges or instructions from the court. The court has no power to allow him to select some other mode, and thereby escape the burdens which the statutes impose upon him in the event he decides to have the court, instead of the jury, pass upon the sufficiency of the plaintiff's evidence.

McCLELLAN, J.—I concur in the conclusions of my Brother MAYFIELD, first, that the exclusion, on motion, of *all* of a plaintiff's evidence is error, and presumptively injurious; but that the latter may be and is refuted, and *reversible* error averted, if the entire evidence so excluded did not make out a prima facie case for the plaintiff; and, second, that the practice of excluding, on motion, the entire evidence of the plaintiff, on the asserted ground of its insufficiency to sustain, prima facie, the plaintiff's case, is fundamentally wrong and ought not to be longer sanctioned. The movant, in such case, should be put to his right to demur to the evidence, or relegated to his other right to test the question by special written charge.