## PRIESTER v. WESTERN UNION TELEGRAPH CO. (3 Div. 468.)

(Court of Appeals of Alabama. May 13, 1924. Rehearing Denied June 3, 1924. Reversed on mandate Dec. 16, 1924.)

1. Telegraphs and telephones ⬅➡54(5)—Sender of unrepeated interstate telegram cannot recover for error, unless willful misconduct or gross negligence shown.

Under Act Cong. June 18, 1910, § 7 (U. S. Comp. St. § 8563), a sender of an unrepeated interstate telegram cannot recover damages for error in transmission in absence of averment and proof of willful misconduct or gross negligence on part of company.

2. Telegraphs and telephones ⬅➡ 66(2)—Regulations governing sending of interstate messages held admissible.

In action by sender for error in transmission of unrepeated interstate telegram, regulations governing sending of interstate messages are admissible.

3. Witnesses ⬅➡363(1) — Bias of witness against party admissible.

Evidence of bias or ·prejudice of witness against one of parties to suit, is admissible for consideration of jury in determining weight to be given testimony of such witness, and whether testimony is for or against party offering it, it does not affect competency or relevancy of testimony.

4. Evidence ⬅➡506 — Refusal to permit telegraph operators to state whether change in. telegram during transmission constituted gross negligence held not error.

In action by sender for error in transmission of unrepeated telegram, refusal to allow expert telegraph operators to give their opinion, or state conclusions as to whether or not it would be gross negligence in transmitting telegram to change word "fifty" to that of "fifteen" was not error; question being within exclusive province of jury or court.

5. Evidence ⬅➡506—That witness was expert telegraph operator does not · qualify him to· testify whether change in telegram during; transmission constituted gross negligence.

The mere fact that witnesses were experienced telegraph operators did not qualify them to give an opinion as to whether in transmitting telegram change of word "fifty" to "fifteen" would be gross negligence or willful misconduct.

6. Telegraphs and telephones ⬅➡65(6)—Affirmative charge for telegraph company as to· special counts alleging gross negligence not error, where evidence showed mere error.

In action by sender for error in transmission of unrepeated telegram, court did not err in giving affirmative charge for defendant as to special counts alleging willful misconduct or gross negligence, where evidence merely showed mere error in transmission.

7. Telegraphs and telephones ⬅➡66(4) — Change of word "fifty" to "fifteen" in transmission of telegram not prima facie gross negligence.

The mere fact that telegraph company in transmitting or delivering telegram changed word "fifty" to "fifteen" did not make out a prima facie case of gross negligence, willfulness, or wantonness.

8. Telegraphs and telephones ⬅➡54(7)—Immaterial whether sender of interstate telegram had knowledge of regulations as to unrepeated telegrams.

Since enactment of Act Cong. June 18, 1910, § 7 (U. S. Comp. St. § 8563), limitation of liability as to unrepeated messages is binding on all senders, and it is immaterial whether sender had knowledge or notice of regulations as to sending and repeating interstate messages.

9. Telegraphs and telephones ⬅➡66(2)—Solvency of sendee of unrepeated interstate telegram immaterial.

In action by sender of unrepeated interstate telegram for error in transmission, whether sendee of message was solvent or insolvent is immaterial.

⬅➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. Telegraphs and telephones** ☞54(5)—**Error in transmitting interstate telegram not gross negligence, within exception from limitation of liability as to unrepeated messages.**

Mere fact that error occurs in transmitting or delivering an interstate telegram does not itself necessarily evidence even simple negligence, much less gross negligence or willful misconduct, within exception from limitation of liability as to unrepeated messages.

On Rehearing.

**11. Courts** ☞91(1), 97(5)—**Court of Appeals bound by decisions of federal courts and state Supreme Court on question of liability for error in transmitting interstate telegram.**

The Court of Appeals is bound by decisions of federal courts and the Supreme Court of Alabama as to liability of telegraph company for error in transmitting unrepeated interstate telegram.

**12. Negligence** ☞11 — **"Gross negligence" defined.**

The term "gross negligence" is employed as the synonym of wantonness or recklessness in defiance of probable consequences, and the term is directly recognized as involving more than negligence to any degree, and as equivalent to wantonness or that recklessness which is beyond all negligence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Gross Negligence.]

**13. Negligence** ☞121(1)—**Party alleging negligence must prove it.**

The party who affirms even simple negligence, much less gross negligence, must prove it, and judges must never leave matter to jury where it is merely conjecture.

**14. Telegraphs and telephones** ☞73(1)—**Evidence held insufficient to warrant submitting to jury question of wanton negligence in transmission of unrepeated interstate telegram.**

In action by sender of unrepeated interstate telegram for error in transmission of telegram offering to sell pecans at 50 cents a pound, evidence that, in relaying message to one of branch offices near place of business of sendee, word "fifty" was changed to "fifteen," *held* insufficient to warrant submitting question of wanton negligence of company to jury.

Appeal from Circuit Court, Butler County; Arthur E. Gamble, Judge.

Action for damages by C. H. Priester against the Western Union Telegraph Company for negligent transmission of a telegram. From a judgment awarding plaintiff nominal damages, he appeals. Affirmed.

Reversed and remanded, on authority of Ex parte Priester, 212 Ala. 271, 102 So. 376.

Powell & Hamilton, of Greenville, for appellant.

Counsel argue for error in the rulings treated, and cite Primrose v. W. U. Tel. Co.,

154 U. S. 1, 14 S. Ct. 1098, 38 L. Ed. 883; W. U. Tel. Co. v. Esteve Bros., 256 U. S. 569, 41 S. Ct. 584, 65 L. Ed. 1094; Strong v. W. U. Tel. Co., 18 Idaho, 389, 109 P. 910, 30 L. R. A. (N. S.) 409, Ann. Cas. 1912A, 55; Carpenter v. Walker, 170 Ala. 659, 54 So. 60, Ann. Cas. 1912D, 863; Dixon v. State, 139 Ala. 104, 36 So. 784; Briggs v. B. R., L. & P. Co., 194 Ala. 277, 69 So. 926; L. & N. v. Travis, 192 Ala. 454, 68 So. 342; W. U. Tel. Co. v. Preister, 18 Ala. App. 531, 93 So. 231; Grey, Comm. by Tel. §§ 37, 38; L. S. R. Co. v. Minogue, 90 Ky. 369, 14 S. W. 357, 29 Am. St. Rep. 380. The question of gross negligence should have been submitted to the jury. Redington v. Pac. Postal Tel. Co., 107 Cal. 317, 40 P. 432, 48 Am. St. Rep. 132; White v. W. U. Tel. Co. (C. C.) 14 F. 710; W. U. Tel. Co. v. Crall, 38 Kan. 679, 17 P. 309, 5 Am. St. Rep. 795; W. U. Tel. Co. v. Howell, 38 Kan. 685, 17 P. 313.

Francis R. Stark, of New York City, and Rushton, Crenshaw & Rushton, of Montgomery, for appellee.

Whether an act has been negligently done is a conclusion, and not even an expert can give his opinion thereon. L. & N. v. Bogue, 177 Ala. 349, 58 So. 392; Eureka Co. v. Bass, 81 Ala. 200, 8 So. 216, 60 Am. Rep. 152; Pointer v. Klamath Falls L. Co., 59 Or. 438, 117 P. 605, Ann. Cas. 1913C, 1076, 1079, note. Uniform rates adopted by the company are effective, without being filed with the Interstate Commerce Commission, and are binding in the absence of the Commission disapproving same. W. U. Tel. Co. v. Esteve Bros., 256 U. S. 566, 41 S. Ct. 584, 65 L. Ed. 1094; Cultra v. W. U. Tel. Co., 44 Interst. Com. Com'n R. 670; Postal Tel. Co. v. Warren-Godwin Co., 251 U. S. 27, 40 S. Ct. 69, 64 L. Ed. 118; C., N. O. & T. P. v. Rankin, 241 U. S. 319, 36 S. Ct. 555, 60 L. Ed. 1022, L. R. A. 1917A, 265; W. U. Tel. Co. v. Showers, 112 Miss. 411, 73 So. 276. The acts of Congress and federal decisions govern rights and liabilities in connection with transmission and delivery of interstate messages. Sou. Exp. Co. v. Byers, 240 U. S. 612, 36 S. Ct. 410, 60 L. Ed. 825, L. R. A. 1917A, 197. In order to make out his case of gross negligence, plaintiff must show something more than mere error in transmission; conduct which is the equivalent of willful or wanton acts. 26 R. C. L. 597; 37 Cyc. 1731; Halsted v. Postal Tel. Co., 193 N. Y. 293, 85 N. E. 1078, 19 L. R. A. (N. S.) 1021, 127 Am. St. Rep. 952; Primrose v. W. U. Tel. Co., 154 U. S. 1, 14 S. Ct. 1098, 38 L. Ed. 883; Weld v. Postal Tel. Co., 210 N. Y. 59, 103 N. E. 957; L. & N. v. Orr, 121 Ala. 489, 26 So. 35; N. Y. Fruit Market v. W. U. Tel. Co., 190 App. Div. 60, 179 N. Y. S. 483; Milwaukee R. Co. v. Arms, 91 U. S. 489, 23 L. Ed. 374; Williams v. W. U. Tel. Co. (D. C.) 203 F. 140;

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

W. U. Tel. Co. v. Czizek (C. C. A.) 286 F. 478; Id., 264 U. S. 281, 44 S. Ct. 328, 68 L. Ed. 682.

BRICKEN, P. J. This is the second appeal in this case. See report on former appeal, 18 Ala. App. 531, 93 So. 231. The case may be briefly stated as follows:

Plaintiff sent a message by defendant telegraph company from Greenville, Ala., to one Lewis at New Orleans, La., offering to sell him a quantity of pecans at 50 cents per pound. The message was, of course, an interstate one, sent under the laws regulating interstate messages, and sent as an unrepeated message under the classification and tariffs which had been adopted by the telegraph company, and which were on file with the Interstate Commerce Commission, as is authorized and required by law.

The evidence showed that the message was correctly transmitted by the telegraph company to its main office at New Orleans, but, in relaying it to one of the company's branch offices near the place of business or residence of the sendee, Lewis, the word "fifty" in some manner was changed to read "fifteen," when it was delivered to the sendee. The sendee acted upon the message as it was delivered, the pecans were shipped by the plaintiff, and in consequence of this error the plaintiff suffered a loss in the price of the pecans aggregating $350.

The original complaint claimed damages only as for simple negligence. On the former appeal it was decided by this court that the message was controlled by the federal statute regulating interstate commerce as to interstate telegraphic messages, and that consequently plaintiff was not entitled to recover as for simple negligence, but only as for gross negligence, basing the decision upon the case of Western Union Telegraph Co. v. Esteve Bros., 256 U. S. 566, 41 S. Ct. 584, 65 L. Ed. 1094.

[1] Prior to Act Cong. June 18, 1910, § 7 (U. S. Comp. Stat. § 8563), this plaintiff would undoubtedly have been entitled to recover in this action; but, under the construction of that statute by the Supreme Court of the United States, the plaintiff could not recover damages claimed in this action for error in an unrepeated message in the absence of averment and proof of willful misconduct or gross negligence on the part of the defendant telegraph company, and, in the absence of such willful misconduct or gross negligence on the part of the telegraph company, the plaintiff must be remitted to his claim of damages against the party to whom the pecans were shipped. Western Union Telegraph Co. v. Esteve Bros., 256 U. S. 566; 41 S. Ct. 584, 65 L. Ed. 1094; Western Union Telegraph Co. v. Preister, 18 Ala. App. 531, 93 So. 231.

The decision of the lower court being reversed on the former appeal, the plaintiff attempted to conform to the decision of this court by adding counts 2, 3, and 4, which claimed damages through willful misconduct or gross negligence on the part of the defendant. Demurrers to these counts being sustained, the plaintiff again amended by adding counts 5, 6, and 7, claiming that the damages were the result of the willful acts of the defendant's agents or servants, acting within the line and scope of their authority, or that they were the result of gross negligence of the defendant. Demurrers to these counts were overruled. To the complaint as amended, the defendant interposed a number of special pleas, 3, 4, 5, and 6, setting up, in substance, that the message was not repeated as was authorized or required by law, that it was an interstate transaction, and under the jurisdiction of the Interstate Commerce Commission and governed by the rules and regulations of the commission, and the damages were limited to the cost of the message. Demurrers to these special pleas were sustained as to counts 5, 6, and 7, but overruled as to count 1.

At the request of the defendant, the court charged the jury that under the first count plaintiff could recover nothing more than the amount paid for the message, with interest thereon, and that plaintiff was not entitled to recover under the fifth, sixth, and seventh counts of the complaint. There was verdict and judgment for the plaintiff for the sum of $1, from which judgment the plaintiff prosecutes this appeal.

Counsel for appellant concede that the ruling of the trial court in overruling the demurrers to defendant's pleas 3, 4, 5, and 6 to count 1 of the complaint was correct, if the decision of this court on former appeal, and that of the Supreme Court of the United States in the Esteve Case, supra, was correct.

On further consideration, we are not convinced of the error of the decision on the former appeal. Moreover, no matter what this court should think of it, the decision of the Supreme Court of the United States construing the federal statute in this action is of course binding upon this court, though we do not mean to intimate that the Supreme Court of the United States did not correctly construe the statute. Western Union Telegraph Co. v. Esteve Bros., 256 U. S. 566, 41 S. Ct. 584, 65 L. Ed. 1094.

We cannot agree with counsel for appellant that it was not shown that the defendant had proved the rates and regulations which it set up as a defense. The defendant, both by allegation and proof, met all the requirements of the statute as construed by the state and federal courts. It was not necessary at all that the plaintiff should have had actual independent knowledge of the requirement that the message should be sent

or written on blanks furnished by the company, nor was it necessary that the plaintiff should have authorized the message to be written on a blank which contained regulations as to sending interstate messages set up in the pleas.

The solvency or insolvency of Lewis, the sendee, was wholly irrelevant and immaterial to any issue raised by the pleadings in this case, and consequently there was no error in the trial court's declining to allow the plaintiff to prove the solvency or insolvency of the sendee.

[2] There was no error of the trial court in allowing the regulations as to sending interstate messages to be introduced in evidence.

[3] There was no error in the rulings of the trial court in allowing proof as to the state of feeling of the witness Dantoni toward the plaintiff. Evidence to show bias or prejudice of a witness against one of the parties to the suit is always admissible for the consideration of the jury in determining what weight they will give to the testimony of such witness. Whether such testimony is for or against the party offering it does not affect the competency or relevancy of the testimony, though rulings as to it, in some cases, might be error without injury.

[4, 5] Likewise, there was no error in the trial court's declining to allow the witnesses to give their opinion or to state conclusions as to whether or not it would be gross negligence, in transmitting the message in question, to change the word "fifty" to that of "fifteen," as was done in this case. To have allowed the witnesses to so testify would have permitted them to usurp the function of the jury or that of the court or counsel. At best it would have been but an opinion or argument on the part of a witness. Judges and text-writers have found it to be difficult, if not impossible, to certainly and correctly define gross negligence, in all cases, and it would certainly be error to allow witnesses to attempt to define gross negligence, which definition would be binding upon the court. The mere fact that these witnesses were expert and experienced telegraph operators did not qualify them to give an opinion as to whether or not a given act would be gross negligence or willful misconduct. That was a question within the exclusive province of the jury, or the court. L. & N. R. R. Co. v. Bogue, 177 Ala. 349, 58 So. 392; Eureka v. Bass, 81 Ala. 200, 8 So. 216; Pointer v. Klamath Falls Land Co., 59 Or. 438, 117 P. 605, Ann. Cas. 1913C, 1076.

[6] There was no error in the trial court giving the affirmative charge for the defendant as to the special counts alleging willful misconduct or gross negligence on the part of the defendant in transmitting and delivering the message. The most that the evidence showed or tended to show was a mere error in transmission. There was no evidence, and no tendency of the evidence. to show such conduct on the part of the defendant telegraph company as was the equivalent of willful or wanton acts, or that could be said to amount to gross negligence. L. & N. R. R. Co. v. Orr, 121 Ala. 489, 26 So. 35; Weld v. Postal Tel. Co., 210 N. Y. 59, 103 N. E. 957; Milwaukee R. R. Co. v. Arms, 91 U. S. 489, 23 L. Ed. 375; Primrose v. Western Union Tel. Co., 154 U. S. 1, 14 S. Ct. 1098, 38 L. Ed. 883. See, also, 26 R. C. L. 597; 37 Cyc. 1731, and notes.

[7-10] The mere fact that, in the transmission or delivery of the message, the word "fifty" was changed to the word "fifteen" did not make out a prima facie case of gross negligence, willfulness, or wantonness. The mere fact that some of the witnesses testified that there was no excuse for making the mistake did not make it a question for the jury as to whether or not the error or mistake was the result of gross negligence, wantonness, or willful injury. Of course, there is no excuse for any carelessness or negligence, and the law holds persons and corporations responsible for their negligence, in proper cases; but in this case the law had provided how the consequence of such negligence could be guarded against; that is, by having the message repeated. This the plaintiff failed to do, and therefore he must abide the result which the law has placed upon his failure. The decisions of this court, and of the federal courts, in construing the act of Congress in question, and similar acts, have settled the law to the effect that it is immaterial whether the plaintiff had independent and actual knowledge or notice of the regulations as to sending and repeating interstate telegraphic messages. The act of Congress introduced a new principle into the legal relations of telegraph companies with their patrons. After this statute, the rate became not, as before, a matter of contract, by which a legal liability could be modified, but it became a matter of law, by which a uniform liability was imposed. Assent to the terms of the rate was thereafter rendered immaterial, because when the rate became a law-fixed rate, dissent was without effect. The limitation of liability attached to the unrepeated telegraph rate which was binding upon all who sent messages. It was within the purview of the act of Congress; that is, messages sent from one state to another, or from the United States to foreign countries. Consequently, whether the plaintiff knew of these regulations, or had notice of the stipulations on the back of the message, or whether it was written on blanks, or telephoned to the company's office, were all immaterial. Likewise, whether the sendee of the message was solvent or insolvent had nothing to do with the liability of the telegraph company.

State and federal courts have sustained the provisions of the statute, and regulations of the Interstate Commerce Commission, requiring messages to be repeated, except as against gross negligence, willfulness, and wantonness, and it is certainly not gross negligence, willfulness, or wantonness to simply fail to use the ordinary care which a prudent man would exercise under similar circumstances. Whether the change in the message here in question was inadvertent or mistaken act of the receiving or delivering operator, or of an operator at a relay station, there was nothing to show, or tending to show, gross negligence, willfulness, or wantonness. We have been unable to find any case which holds that mere error in the transmission and delivery of a message amounts to gross negligence, willful or wanton misconduct. If the evidence in this case could be held to show gross negligence, wantonness, or willfulness, then every case of error or mistake in receiving, sending, or delivering telegraphic messages might be held to be gross negligence, wanton or willful misconduct. The mere fact that an error occurs in transmitting or delivering a telegraphic message does not itself necessarily evidence even simple negligence. The most skillful persons may make mistakes. An error in receiving, transmitting, or delivering a telegraphic message may in some cases amount to breach of contract, but not even to simple negligence, much less gross negligence, wanton or willful misconduct.

We are unable to find any reversible error in the record, and therefore the judgment of the trial court must be affirmed.

Affirmed.

### On Rehearing.

[11] Counsel for appellant has filed an able and lengthy brief in support of the application for rehearing which has been considered by the court. Whatever might be the opinion of this court, as to the question argued by counsel, that the question of gross negligence should have been submitted to the jury by the trial court, we do not feel at liberty to depart from what we believe to be the decision of the federal courts and the Supreme Court of Alabama construing the statute in question, and as to what is sufficient to constitute gross negligence as used in the statute in question. This court is bound by the decisions of the federal courts and of the Supreme Court of Alabama as to these questions, and we are constrained to hold that, under the decisions of the federal courts and of the Supreme Court of Alabama, there was no evidence to authorize the submission of the question of gross negligence, wantonness, or willful injury to the jury.

[12] The term "gross negligence" has been long employed in this state as the synonym of wantonness or recklessness in defiance of probable consequences. While the difficulties of properly defining the term "gross negligence" have been pointed out by the state and federal courts, the term has been directly recognized as involving more than negligence to any degree, and as being equivalent to wantonness or that recklessness which is beyond all negligence.

The Supreme Court of Alabama has also said that the mere error of judgment as to the result of doing an act, or the omission of an act, having no evil purpose or intent, may constitute simple negligence, but cannot rise to the degree of wanton negligence or willful wrong or gross negligence when used as a synonym of wantonness or willful injury. L. & N. R. R. Co. v. Orr, 121 Ala. 489, 26 So. 35; Lee's Case, 92 Ala. 262, 9 So. 230.

[13] The party who affirms even simple negligence, much less gross negligence, must prove it, and judges should never leave the matter to the jury where it is a mere conjecture. Scales' Case, 173 Ala. 644, 55 So. 821.

[14] There should be evidence tending to at least establish such negligence before it is submitted to the jury. Under the decisions of the federal courts and the Supreme Court of this state we are yet of the opinion that there was no evidence in this case which authorized, much less required, the trial court to submit the question of wanton negligence to the jury.

Application overruled.

PER CURIAM. Reversed and remanded, on authority of Ex parte Priester, 212 Ala. 271, 102 So. 376.